IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


**CAROLYN S. PIPPIN,**

      **Plaintiff,**

**vs.**                                      **CASE NO. 5:05cv63-RH/WCS**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

      This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D). It is recommended that the decision of the Commissioner be reversed and remanded for reconsideration.

**Procedural status of the case**

      Plaintiff, Carolyn S. Pippin, applied for disability insurance benefits. Plaintiff was 56 years old at the time of the administrative decision, had a 12th grade equivalency education and cosmetology training, and had past relevant work as a hairdresser and a waitress.

Plaintiff alleges disability due to Crohn's disease[1] and degenerative spinal arthritis.  The Administrative Law Judge found that Plaintiff has the residual functional capacity to do a full range of light work, can still do her past relevant work, and is not disabled as defined by Social Security law.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211

---

[1] Crohn's disease is a chronic granulomatous inflammatory disease of unknown etiology, involving any part of the gastrointestinal tract from mouth to anus, but commonly involving the terminal ileum with scarring and thickening of the bowel wall; it frequently leads to intestinal obstruction and fistula and abscess formation and has a high rate of recurrence after treatment.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at:

http://www.mercksource.com/pp/us/cns/cns_hl_dorlands.jspzQzpgzEzzSzppdocszSzuszSzcommonzSzdorlandszSzdorlandzSzdmd_a-b_00zPzhtm.

(11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.    Does the individual have any impairments which prevent past relevant work?

5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Analysis**

> **Whether the Administrative Law Judge properly considered the evidence as to Plaintiff's chronic diarrhea when determining her ability to do her past relevant work**

Plaintiff was diagnosed with Crohn's disease in 1996.  R. 153.  A biopsy revealed mild edema, vascular congestion, and mild nonspecific chronic inflammation of the small and large intestine.  *Id.*

Plaintiff was treated in a hospital for this disease on November 14, 1999.  R. 109. The treating physician, Khalid Iqbal, M.D., wrote that Plaintiff had been under his care for Crohn's disease for several years, and had been "doing very well."  R. 111.  He said

she had been started on Imuran[2] six months earlier; her belly pain had almost resolved and she was feeling very well.  *Id.*  He said her diarrhea had been reduced to probably two to three times a day.  *Id.*  She reported to him, however, that in the past few days she had had pain in the right lower quadrant.  *Id.*  She said the pain was very severe and prevented her from doing anything.  *Id.*  Plaintiff said that she had not taken Asacol[3] as prescribed for two weeks because she had run out.  The physician found no increase in diarrhea and suspected renal calculi instead of a flare up of Crohn's disease.  R. 109, 112-113.  She felt better after medications, and was discharged after four days.  R. 109.  Dr. Iqbal discontinued Imuran but continued Asacol.  R. 109-110.

In subsequent weeks, Plaintiff still experienced abdominal pain, and she had an upper gastrointestinal series, a small bowel series, and a gallbladder ultrasound on December 27, 1999.  R. 150-152.  The small bowel examination revealed a distal small bowel stricture near the anastomosis.[4]  R. 150.  The physician reading the results wondered if this was the cause of the pain or whether Plaintiff had active enterocolitis.[5]

Plaintiff's abdominal pain continued, and she returned to the hospital on January 6, 2000.  R. 146.  She said that the pain was like labor pain.  *Id.*  She was admitted for a

---

[2] Imuran is an immunosuppressive antimetabolite.  PHYSICIANS' DESK REFERENCE (1998), p. 1040.

[3] Asacol is an anti-inflammatory medication.  PHYSICIANS' DESK REFERENCE (1998), p. 2312.

[4] Anastomosis is:  1. a connection between two vessels.  2. an opening created by surgical, traumatic, or pathological means between two normally separate spaces or organs.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[5] Enterocolitis is inflammation involving both the small intestine and the colon. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

colonoscopy, which included a biopsy of the severe stricture formation detected in the small bowel series in November, 1999.  R. 146-147.  The colonoscopy revealed the stricture of the anastomosis, which was so small that open forceps could not come through.  R. 148.  Multiple biopsies of the anastomosis were performed, but there was no evidence of Crohn's disease.  *Id.*

On January 17, 2000, Plaintiff was again admitted to the hospital "because of a severe stricture at the ileocolic anastomosis."  R. 126.  It was noted by the surgeon, Hossein Fallahzadeh, M.D., that the results from the recent colonoscopy were "unremarkable."  *Id.*  Plaintiff underwent surgery.  R. 127-128.  A "severe stricture with a lot of inflammatory change" was found and 10 centimeter portion of the bowel was removed.  R. 127.  There was no evidence of recurrence of Crohn's disease.  *Id.*

Dr. Fallahzadeh referred Plaintiff to Dr. Samir Cook, and Plaintiff was seen by Dr. Cook on February 16, 2000.[6]  R. 161.  Plaintiff reported that she was having some abdominal pain around the incision site and 5 to 6 loose bowel movements each day, "but overall feels okay."  *Id.*  Dr. Cook found "hyperactive" bowel sounds and tenderness in the right lower quadrant.  *Id.*  He discontinued Asacol and started Pentasa.[7]  R. 162.  He also discontinued Vioxx, and prescribed Tylenol instead, thinking that Vioxx might worsen the inflammatory bowel disease.  *Id.*

---

[6] Dr. Cook reported that Plaintiff had been treated by Dr. Fallahzadeh for Crohn's disease since 1992.  R. 161.

[7] Pentasa is mesalamine, an aminosalicylate anti-inflammatory agent for gastrointestinal use.  It is used for treatment of mildly to moderately active ulcerative colitis.  PHYSICIANS' DESK REFERENCE (2004), pp. 3153-3154.

Plaintiff went to Dr. Cook on March 14, 2000, on a follow-up visit.  R. 160.
Plaintiff reported she was feeling well, with no abdominal discomfort.  *Id.*  She was
having 3 to 4 bowel movements a day, which she said was her normal frequency.  *Id.*
She said that she had bowel movements after meals, but this was not new for her.  *Id.*
Upon examination, Dr. Cook found Plaintiff's abdomen to be not tender and bowel
sounds were active.  *Id.*

Likewise, in a return visit to Dr. Cook on June 13, 2000, Plaintiff was feeling well,
her bowels were moving normally, and she had no complaints at that time.  R. 159.  Her
abdomen, however, was tender in the right lower quadrant.  *Id.*

On October 11, 2000, Dr. Cook saw Plaintiff on another follow-up visit.  R. 158.
She reported she was having two bowel movements a day, with some streaks of blood.
*Id.*  She was fatigued, and felt "unusual."  *Id.*  Her abdomen was not tender.  *Id.*  Dr.
Cook determined that Plaintiff's Crohn's disease was in remission.  *Id.*

Two days later, on October 13, 2000, Plaintiff was seen by Dr. Cook.  R. 157.
Plaintiff said she was "doing well," was "back to her usual self and is having no
complaints."  *Id.*  Dr. Cook said that her Crohn's disease was stable.[8]  *Id.*

Another medical note dated November 20, 2000, by another health provider
stated that Plaintiff had no major new problems.  R. 170.

On February 2, 2001, Plaintiff returned to Dr. Cook.  R. 156.  She reported she
was doing well, and her bowels were "moving well" without blood, but she had some

---

[8] A CT scan of her brain had revealed "a 5 mm. area of low attenuation in the
topography of the right anterior limb of the internal capsule consistent with a chronic
ischemic infarct," but with no evidence of intracerebral hemorrhage.  *Id.*

coughing and congestion.  *Id.*  Nothing else remarkable was noted except that her

Crohn's disease was stable.  *Id.*

Dr. Cook saw Plaintiff on March 19, 2001, and she reported that she was having

2 to 3 bowel movements a day without blood.  R. 155.  She had had a colonoscopy on

March 5, 2001, which revealed distal small bowel ulcers showing nonspecific

inflammatory changes consistent with Crohn's disease, but without evidence of acute

inflammation.  *Id.* and R. 142.  His opinion was that her Crohn's disease was stable, and

she was to return in one year.  R. 155.

Plaintiff alleges commencement of disability on December 31, 2001.  R. 237.  On

June 25, 2003, Plaintiff was examined by Kris Lewandowski, M.D.  R. 172-174.  Her

chief complaint was diarrhea.  R. 172.  Dr. Lewandowski noted a history of Crohn's

disease, arthritis, and hypertension.  *Id.*  She reported that she had had diarrhea for

eleven years, since her first surgery.  *Id.*  She reported she had 4 to 5 bowel

movements a day, mostly after meals.  *Id.*  She also reported having abdominal pain.

*Id.*  Plaintiff reported that she took Atenolol[9] (for hypertension) "every few months," and

Dr. Lewandowski observed that the bottle, prescribed in December, 2002, was half full.

*Id.*  He also noted that Plaintiff had a bottle of Pentasa, prescribed in December, 2002,

which likewise was half full, and he said that he suspected that Plaintiff was not taking

her medications for diarrhea.  R. 173.

_____

[9] Atenolol (brand name Tenormin) is a synthetic, beta$_1$-selective (cardioselective) adrenoreceptor blocking agent used to manage hypertension.  PHYSICIANS' DESK REFERENCE (2004), p. 689.

Plaintiff was seen by Azzam Adhal, M.D., on July 15, 2003.  He noted that her hypertension was well controlled with Atenolol.  R. 193.  Plaintiff reported to him that she took eight tablets of Pentasa a day.  *Id.*  He noted that she reported that "she has some exacerbations at times, and she has continued to have diarrhea, but she says she can tolerate the diarrhea."  *Id.*  She had stopped taking vitamin B-12 a year earlier.  *Id.*  Upon examination, Plaintiff's abdomen was found to be "nontender."  *Id.*

On referral from Dr. Adhal, Plaintiff was seen by a gastroenterologist, Sudhakar C. Reddy, M.D., on August 14, 2003.  R. 224.  Dr. Reddy reported that "she is doing pretty well.  She still has occasional loose stools; she has about 4-5 of those per day.  She very seldom sees any blood.  She has been taking Pentasa 4 tablets b.i.d. and has [been] doing well."  *Id.*  Her abdomen was not tender upon examination.  R. 225.  A colonoscopy was ordered since she had not had one in two years and Dr. Reddy wanted to see if her Crohn's disease was in her colon.  *Id.*

Plaintiff was seen again by Dr. Reddy on September 11, 2003.  R. 223.  The colonoscopy was normal to the transverse colon where the examination could not continue due to adhesions.  *Id.*  She was taking Pentasa.  *Id.*  He said that her Crohn's disease was then in remission.  *Id.*

Plaintiff returned to Dr. Reddy on January 13, 2004.  R. 222.  She was still taking Pentasa and was having 4 to 5 bowel movements per day.  *Id.*

On July 13, 2004, she again was seen by Dr. Reddy.  She was having 3 to 4 bowel movements daily without blood.  R. 221.  She complained of lower back pain but not much abdominal pain.  *Id.*  No pain was noted upon deep palpation of the abdomen. *Id.*

On July 27, 2004, Plaintiff was seen by Dr. Adhal.  R. 226.  With respect to

Crohn's disease, she said she was "doing well."  *Id.*  She still had bouts of diarrhea.  *Id.*

On November 5, 2004, Plaintiff returned to Dr. Adhal.  R. 227.  She complained

of severe low backache and pain in her knees and hips.  *Id.*  She also said her Crohn's

disease was in "acute exacerbation with severe diarrhea on and off."  *Id.*  Dr. Adhal's

diagnosis was Crohn's disease and degenerative arthritis most likely secondary to

Crohn's disease.  *Id.*

The administrative hearing was held on October 29, 2004.  R. 234.  Plaintiff

testified that she had to go to the bathroom 4 to 5 times a day, and usually had to go

within 30 minutes of eating.  R. 241.  She also said she cramped a lot.  *Id.*  She said

that when the "pain hits," she needed to get to a bathroom "pretty quick."  R. 242.

Sometimes, she said, she soiled her clothing.  R. 240.  She said that the pain lasted

about 5 to 10 minutes, and this occurred 4 or 5 times per day.  R. 243.

A vocational expert testified that Plaintiff's past relevant work as a hairdresser

and as a waitress was light work.  R. 250.  The following exchange then took place:

ALJ:   If she had to leave the work station two or three times a day other
       than breaks and meals over the course of an hour in addition to
       regular breaks and meals, could she perform her past work?

VE:    No, she could not.

R. 251.

Plaintiff contends that the Administrative Law Judge erred because he did not

establish the work requirements of her past relevant work as a hairdresser and as a

waitress.  Plaintiff contends that she could not work in either job suffering from

unpredictable bouts of diarrhea.  Doc. 9, pp. 11-12.  She points out that the vocational

expert testified that if Plaintiff had to leave her work station "two or three times a day other than breaks and meals over the course of an hour in addition to regular breaks and meals," she could not perform her past relevant work.  She argues that this means that "even the VE agreed that even two bathroom breaks (which she testified happens to her) in a one hour period on an unscheduled basis would preclude her ability to perform her past work."  Doc. 9, p. 12.  Plaintiff also inconsistently argues:  "As explained by the VE, just having more than one unscheduled break in a one hour period on a daily basis would preclude Ms. Pippin's ability to perform her past work."  *Id.*, p. 14.

Pain and other symptoms which are reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.  Social Security Ruling 96-8p, p. 4.  Pain and other symptoms may affect either exertional or non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for disregarding the claimant's subjective testimony as to the severity of her symptoms must be based upon substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

        The Administrative Law Judge determined that Plaintiff's testimony was only

partially credible, and "not to the extent she has symptomatic [Crohn's] disease or a

level of musculoskeletal pain and limitation which precludes all work activity."  R. 18.

He said that he reached this conclusion because Plaintiff's Crohn's disease had been

stable at "all times relative to this decision," Plaintiff had worked with this "stable

condition" for many years, "without apparent difficulty."  *Id.*  He found that she "only

stopped working when her husband moved to Florida and she moved to be with him."

He noted that she alleges disability commencing on December 31, 2001, (R. 237), but

did not seek medical care for about one and one-half years.  *Id.*  The Administrative Law

Judge said:  "If the claimant was having severe fatigue, pain and other symptoms, it is

only reasonable she would have visited with a doctor prior to July 2003, . . . ."  *Id.*  The

Administrative Law Judge also noted that there were no treating source assessments as

to the severity of Plaintiff's impairments.  *Id.*

        Additionally, the Administrative Law Judge found that Plaintiff's weight was

stable, implicitly reasoning that Plaintiff's Crohn's disease had not resulted in an

unhealthy loss of weight.  R. 17.  She did not establish a treating relationship with an

internist and gastroenterologist until "long after she moved to Florida."  *Id.*  "A

colonoscopy, small bowel series and bone scan were all normal."  *Id.*  Her disease "has

been stable at all times . . . ."  *Id.*  The Administrative Law Judge also noted that during

the period when she was not seeking medical treatment, on June 25, 2003, when she

was consultatively examined by Dr. Lewandowski, she had a bottle of medication issued

to her for Crohn's disease in December, 2002, and it was still half full, leading to the

surmise that she was not taking her medication as prescribed.  *Id.*  In summary, as

suggested by Defendant, the Administrative Law Judge determined that Plaintiff's

testimony about the frequency and suddenness of diarrhea and need for bathroom

breaks was overstated and not credible to the degree alleged.  Doc. 12, p. 4.

All of the reasons given by the Administrative Law Judge for partially discounting

Plaintiff's testimony are supported by substantial evidence in the record discussed

above.  Plaintiff did not seek treatment for a significant period of time after the alleged

onset of disability, her treating physicians repeatedly said that her condition was stable

or in remission, she apparently did not regularly take the prescribed medication in the

six months preceding June, 2003, and none of the physicians noted any restrictions

upon ability to do work activity caused by the frequency or suddenness of Plaintiff's

bowel movements.[10]

Further, the testimony quoted above from the vocational expert does not aid

Plaintiff's claim.  The question posed was internally inconsistent, and thus the answer

was meaningless.  The question was:  "If she had to leave the work station two or three

---

[10] The evidence as to why Plaintiff sold her cosmetology business and moved to
Florida was mixed.  Plaintiff said in her disability report that she stopped working to
move to Florida to be with her husband, and because her back and stomach hurt so
badly.  R. 52.  In another disability report, she said that she stopped working because
she was feeling badly and so that she could move to Florida to be with her husband.  R.
65.  She testified at the hearing that her disease was getting to the point that she could
not work.  R. 240.  The Administrative Law Judge, however, worded his finding very
carefully, observing only that Plaintiff did not close her cosmetology business until her
husband moved to Florida, and she moved to be with him.  R. 18.  This finding is
supported by substantial evidence in the record, though it is not necessarily a finding,
standing alone, to discount Plaintiff's testimony as to symptoms.  The Administrative
Law Judge also observed that:  "When the claimant stopped working in December
2001, sold her business and moved to Florida to be with her husband, she was not
seeking or obtaining any medical treatment related to any of these complaints."  R. 17.
This subsidiary finding is also supported by substantial evidence in the record.

times *a day* other than breaks and meals *over the course of an hour* in addition to regular breaks and meals, could she perform her past work?"  (Emphasis added.)  It is impossible to tell whether the expert's negative answer meant that such a person could not do her past work if she had to leave her work station two or three times *a day* other than breaks and meals, or two or three times *an hour* other than breaks and meals, or two or three times over a day adding up to an hour other than breaks and meals.

Plaintiff argues that the Administrative Law Judge improperly failed to give weight to the opinion of the state agency physician, who said that Plaintiff needed "free" access to a bathroom during work.  Doc. 9, p. 12, citing R. 204.  Every worker needs "free" access to a bathroom during work, so this comment is not useful evidence.  In any event, this physician also determined that Plaintiff could perform a full range of medium work.  R. 199-205.  The Administrative Law Judge rejected this opinion, finding Plaintiff was capable of only light work.  R. 18.  Since the opinion of a nonexamining physician is entitled to little weight, Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985), it was not error that the Administrative Law Judge did not rely upon the finding to make his own finding as to the frequency of Plaintiff's need for bathroom breaks.

For all of these reasons, the first point argued by Plaintiff is not persuasive.

**Whether the Administrative Law Judge should have obtained an updated assessment of Plaintiff's functional capacity due to a September, 2004, x-ray which confirmed "advanced disc disease at L5-S1" and arthritic changes in the facet joints at L3-S1**

As noted above, Plaintiff said she had to quit her work as a hairdresser in part because her back hurt so badly.  R. 52.  On March 30, 2003, she said that she had "real bad" pain "all the time" in her stomach, back, and legs.  R. 82.  She also said that her

stomach, back, and legs hurt so much that she could not be pleasant to her customers. R. 84.  On August 29, 2003, she reported that her back hurt most of the time when she stood, sat, or walked.  R. 105.  She said she could hardly bend.  *Id.*

The medical records reflect that Plaintiff complained of back pain during her hospital stay on November 14, 1999, and Vioxx was prescribed.  R. 109.  Vioxx was discontinued, however, on February 16, 2000, because it was thought that it might exacerbate her inflammatory bowel disease.  R. 162.

On June 25, 2003, Plaintiff told Dr. Lewandowski that she suffered from pain in her back a few days each week, that she had pain in her knees with ambulation or activity, and that she had had such pain for about ten years.  R. 172.  Upon examination, Dr. Lewandowski found that her extremities were equal size and length, joints were not swollen, tender, or deformed, mobility was 100%, and muscle strength and size was normal.  R. 173.  Straight leg raising was negative.  *Id.*  These were essentially negative findings.

On September 28, 2004, Plaintiff had an x-ray of her lumbar spine and right knee.  R. 228.  Marked narrowing of the disc space at L5-S1 with marginal sclerotic changes was found, as well as arthritic changes in the facet joints at L3-L4 bilaterally. *Id.*  The diagnosis was "degenerative and arthritic changes of the spine" and "advanced disc disease L5-S1."  *Id.*  The knee had only "mild degenerative changes."  *Id.*

Plaintiff testified at the administrative hearing on October 29, 2004, that since she stopped working, her back pain has continued to become worse.  R. 240.  She said that she had to change position every thirty minutes or so when sitting, and that she was more used to standing up than sitting.  R. 246.  She said she could stand about one

hour, but would then need to sit down.  *Id.*  She found lying upon her back to be painful. R. 247.  She did not think that she could put in eight hours of work per day.  R. 248.

On November 5, 2004, Plaintiff was seen by Dr. Adhal.  R. 227.  She complained of severe low backache and pain in her knees and hips.  *Id.*

Plaintiff argues that this evidence shows that her back pain was growing worse in 2003 and 2004.  She argues that given the x-ray findings, the Administrative Law Judge had no basis for finding that she could perform a full range of light work, and especially her past relevant work as a hairdresser and waitress, which requires the ability to stand for long periods.  Plaintiff argues that the Administrative Law Judge should have sought medical opinions as to her residual functional capacity as of the date of the administrative hearing, in October, 2004.  She contends that an assessment of the combination of her Crohn's disease and back pain should have been done.

The Administrative Law Judge discounted Plaintiff's back pain testimony, reasoning (as he did with the Crohn's disease impairment) that if Plaintiff had been having pain and other symptoms, she would have sought medical care prior to July, 2003, about one and one-half years after the date alleged as the onset of her disability. R. 18.  The Administrative Law Judge then considered the results of the September, 2004, x-ray, acknowledged that this showed "a fairly advanced level of degenerative disc disease at L5/S1," and concluded that Plaintiff "does have some back-related limitations, but she does not have a medically determinable spinal condition of a level of severity which can reasonably preclude all work activity."  R. 18.  He also noted that Plaintiff had not sought treatment for her back pain until August, 2004, three years after the alleged onset date.

Plaintiff argues that the Administrative Law Judge might have determined, based upon Dr. Lewandowski's findings, that her back pain was not disabling in June, 2003, but he should have given fair consideration to an onset date in September, 2004, when the x-ray results were obtained.  She also points out that there is no medical opinion as to her residual functional capacity with respect to her back condition, and argues that it was improper for the Administrative Law Judge to express a lay opinion as to the significance of the x-ray results with respect to Plaintiff's residual functional capacity.

Plaintiff relies upon cases from several circuits which so hold.  Three circuits find that the Administrative Law Judge should not make a finding of residual functional capacity (RFC) based upon raw medical data, but must obtain an opinion as to residual functional capacity from a physician.  Manzo-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 17 (1st Cir. 1996); Bauzo v. Bowen, 803 F.2d 917, 926 (7th Cir. 1986).

> With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.  Of course, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.  But when, as now, a claimant has sufficiently put her functional inability to perform her prior work in issue, the ALJ must measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.

76 F.3d at 17 (citations omitted).  *See also* Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000) (improper to rely upon non-examining physicians for an RFC finding, holding that the ALJ should have sought an RFC opinion from either treating or consultative physicians); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2001) ("A claimant's residual functional capacity is a medical question"); Lauer v. Apfel, 245 F.3d 700, 706 (8th Cir.

2001) (in determining the RFC, "the ALJ had to address complex medical issues that could be resolved only with professional assistance").

The Eleventh Circuit has not taken a position on this issue.  Defendant correctly points out that the burden is on Plaintiff at step 4 to prove inability to return to her past relevant work, and argues that Plaintiff, who was represented by counsel at the hearing, should have obtained a medical opinion as to her residual functional capacity prior to the hearing.

But Social Security administrative hearings differ from civil trials, and the rules for allocation of the burden of proof are blurred.  "Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."  Sims v. Apfel,  530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), *citing* Richardson v. Perales, 402 U.S. 389, 400-401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."  Graham v. Apfel, 129 F.3d at 1422, *citing* Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  This basic duty exists whether or not the claimant is represented.  Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted).

For example, the regulations provide that a consultative examination may be ordered by the Administrative Law Judge if Plaintiff's medical sources do not provide sufficient medical evidence to determine whether Plaintiff is disabled.  20 C.F.R. § 416.917.  Further,

> . . . if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000).  The Commissioner's regulations also provide that if "the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled," "[w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available.  *We will seek additional evidence or clarification from your medical source when* the report from our medical source contains a conflict or ambiguity that must be resolved, *the report does not contain all the necessary information*, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1512(e)(1) (emphasis added).[11]  *See also*, Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (stating that "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record") (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)(stating that "even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte.")).

Defendant further argues that Plaintiff must show that there are "gaps in the evidence necessary to demonstrate prejudice," citing Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).  This is the standard to be applied to determine whether an

---

[11] This passage is quoted in an unpublished Eleventh Circuit opinion.  Johnson v. Barnhart, 138 Fed.Appx. 266, 271 (11th Cir. 2005).

unrepresented claimant has been denied due process.  There, the court determined that "there must be a showing of prejudice before it is found that the claimant's right to due process have been violated to such a degree that the case must be remanded to the Secretary for further development of the record."  <u>Graham v. Apfel</u>, 129 F.3d at 1423. But "[i]t is not necessary to determine that the presence of counsel would necessarily have resulted in any specific benefits."  *Id.*

Had the x-ray results in the case at bar preceded Dr. Lewandowski's examination in 2003, the findings of Dr. Lewandowski coupled with the lack of any treatment history for back pain prior to September, 2004, would have been substantial evidence in the record to support a finding that Plaintiff's advanced disc disease has not significantly reduce her residual functional capacity.  But the x-ray results came a year later.  A marked narrowing of the disc space at L5-S1, found to be "advanced disc disease L5-S1," is an objective medical finding that reasonably could preclude a wide range of light work and the performance of  Plaintiff's past relevant work, at least in the period after September, 2004.  The lack of other medical evidence to explain the meaning of the results of this x-ray is a significant gap in the evidence.

**Conclusion**

It is recommended, therefore, that the case be remanded for additional evidence concerning Plaintiff's spinal impairment and to reconsider Plaintiff's residual functional capacity in light of that evidence.  Since a determination of residual functional capacity must consider all impairments in combination, Plaintiff should be afforded the opportunity to present additional evidence as to the effects of her experience of Crohn's disease, to whatever degree, upon her residual functional capacity.

Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the decision of the

Commissioner to deny Plaintiff's application for Social Security benefits and **REMAND**

for reconsideration for the purposes stated above.

      **IN CHAMBERS** at Tallahassee, Florida, on November 16, 2005.


                 **s/     William C. Sherrill, Jr.**
                 **WILLIAM C. SHERRILL, JR.**
                 **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

      **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**